UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIANA H.,[1] | Case No.  23-cv-04780-TSH |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| MARTIN O'MALLEY, | Re: Dkt. Nos. 15, 20 |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff Dariana H. moves for summary judgment to reverse the decision of Defendant Martin O'Malley, Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq., and to remand this case in accordance with sentence four of 42 U.S.C. § 405(g).  Motion at 1, ECF No. 15.  Defendant cross-moves to affirm.  ECF No. 20.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion.[2]

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 7, 8.

## II.    PROCEDURAL HISTORY

On January 29, 2021, Plaintiff filed an application for Social Security Supplemental Security Income benefits, stating a disability onset date of January 1, 2017.  AR 175.  Plaintiff later amended the alleged onset date to January 29, 2021.  AR 17, 299–300.  The application was denied initially on July 20, 2021, and again on reconsideration on November 1, 2021.  AR 109, 118.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 124–26.  An ALJ held a hearing via teleconference on September 27, 2022, and issued an unfavorable decision on October 17, 2022.  AR 14–26, 32–58.  On December 15, 2022, Plaintiff filed a request for review with the Appeals Council.  AR 172–74.  The Appeals Council denied review on August 1, 2023.  AR 1–3.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III.    ISSUES FOR REVIEW

Plaintiff raises six issues on appeal: (1) that the ALJ erred in evaluating Plaintiff's testimony; (2) that the ALJ erred in evaluating the severity of Plaintiff's back pain; (3) that the ALJ erred in finding the medical opinion of licensed psychologist Dr. Katherine Wiebe unpersuasive; (4) that the ALJ erred in finding the findings of four State agency consultants persuasive; (5) that the ALJ erred in finding the opinion of licensed clinical psychologist Dr. Aparna Dixit persuasive; and (6) that the ALJ erred in evaluating Plaintiff's RFC.

## IV.    STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards.  *Id.*  The Court may set aside a denial of benefits only if "it contains legal error or is not supported by substantial evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).  Substantial means "more than a mere scintilla[,]" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up).  Under this standard,

2

1    which is "not high," the Court looks to the existing administrative record and asks "whether it

2    contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned

3    up).

4         The Court "must consider the entire record as a whole, weighing both the evidence that

5    supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

6    simply by isolating a specific quantum of supporting evidence." *Garrison*, 759 F.3d at 1009

7    (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in

8    medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence

9    can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's

10   decision. *Id.* (citation omitted).

11        Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is

12   harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that,

13   despite the legal error, the agency's path may reasonably be discerned, even if the agency explains

14   its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a]

15   reviewing court may not make independent findings based on the evidence before the ALJ to

16   conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the

17   ALJ asserts." *Id.* (cleaned up); *see also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)

18   (courts "cannot affirm the decision of an agency on a ground that the agency did not invoke in

19   making its decision").

20                          **V.    DISCUSSION**

21   **A.    Framework for Determining Whether a Claimant Is Disabled**

22        A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any

23   substantial gainful activity by reason of any medically determinable physical or mental

24   impairment which can be expected to result in death or which has lasted or can be expected to last

25   for a continuous period of not less than twelve months" and (2) the impairment is "of such severity

26   that he is not only unable to do his previous work but cannot, considering his age, education, and

27   work experience, engage in any other kind of substantial gainful work which exists in the national

28   economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).

United States District Court
Northern District of California

1    To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential

2    analysis.  20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same

3    standard for supplemental security income).  The claimant bears the burden of proof at steps one

4    through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

5        At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

6    gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

7    involves significant mental or physical activities[.]"  *Ford*, 950 F.3d at 1148 (cleaned up).  Here,

8    the ALJ determined Plaintiff had not performed substantial gainful activity since January 29,

9    2021, the revised alleged onset date.  AR 19.

10        At step two, the ALJ decides whether the claimant's impairment or combination of

11    impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

12    claimant's 'physical or mental ability to do basic work activities[.]'"  *Ford*, 950 F.3d at 1148

13    (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

14    20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

15    impairments: cyclic vomiting syndrome; depressive disorder; anxiety disorder; panic disorder;

16    adjustment disorder; obsessive compulsive disorder ("OCD"); post-traumatic stress disorder

17    ("PTSD"); learning disorder; and cannabis use disorder.  AR 19.

18        At step three, the ALJ evaluates whether the claimant has an impairment or combination of

19    impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

20    "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

21    describe impairments that are considered "to be severe enough to prevent an individual from doing

22    any gainful activity[.]"  20 C.F.R. § 404.1525(a).  Each impairment is described in terms of "the

23    objective medical and other findings needed to satisfy the criteria of that listing."  *Id.* §

24    404.1525(c)(3).  "For a claimant to show that his impairment matches a listing, it must meet all of

25    the specified medical criteria.  An impairment that manifests only some of those criteria, no matter

26    how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).

27    If a claimant's impairment either meets the listed criteria for the diagnosis or is medically

28    equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without

United States District Court
Northern District of California

4

considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ

determined Plaintiff did not have an impairment or combination of impairments that meets the

listings.  AR 20–21.

    If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

despite their limitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

perform past relevant work, defined as "work that [the claimant has] done within the past five

years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to

do it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant

can perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

determined Plaintiff has the RFC "to perform light work as defined in 20 CFR 416.967(b) except

she can stoop, crouch and crawl frequently."  AR 21.  The ALJ found Plaintiff "is able to perform

simple, routine and repetitive tasks, involving simple work-related decisions, but not at production

rate (e.g., assembly line work).  She is able to interact with the public, co-workers and supervisors

frequently."  AR 21; *see* AR 21–24.  However, the ALJ determined Plaintiff has no past relevant

work.  AR 24.

    At step five, the burden shifts to the agency to prove that "'the claimant can perform a

significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting

*Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely

on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt.

P, App. 2,[3] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).

"[A] vocational expert or specialist may offer expert opinion testimony in response to a

hypothetical question about whether a person with the physical and mental limitations imposed by

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant."  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*  "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*

United States District Court
Northern District of California

the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4]  *Id.*  Here, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  AR 24.  The ALJ determined that given Plaintiff's limitations Plaintiff could work as a cleaner in housekeeping, an inspector, or a garment sorter. AR 25.

**B.      Plaintiff's Subjective Symptom Allegations**

Plaintiff argues that the ALJ erred in assessing her subjective symptoms.  Pl.'s Mot. at 11–13.

**1.      Legal Standard**

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis."  *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009); *Leon v. Berryhill,* 880 F.3d 1041, 1046 (9th Cir. 2018) (as amended); *Diedrich v. Berryhill,* 874 F.3d 634, 638 (9th Cir. 2017); *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017) (as amended); *Garrison,* 759 F.3d at 1014; *Molina v. Astrue,* 674 F.3d 1104, 1112 (9th Cir. 2012).  Under the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir. 2007).  If this test is satisfied and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.* at 1036.

Under this standard, "the ALJ must identify what testimony is not credible and what

---

[4] The DOT classifies jobs by their exertional and skill requirements.  20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi,* 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted).  "In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." (internal citations omitted). *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021).  *See also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("the ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.").  However, "the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina,* 674 F.3d at 1112 (citation and internal quotations omitted). Likewise, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."  SSR 16-3P (S.S.A. 2016).

In determining whether an individual's symptoms will reduce her capabilities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Molina,* 674 F.3d at 1112 (citations and internal quotations omitted); *see also Rounds v. Commissioner of Soc. Sec. Admin.,* 807 F.3d 996, 1006 (9th Cir. 2015) (as amended) (to assess credibility the ALJ "may consider, among other factors, 'ordinary techniques of credibility evaluation,' 'inadequately explained failure to seek treatment or to follow a prescribed course of treatment,' and 'the claimant's daily activities'").

### 2.    Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  AR 22.

Plaintiff alleged disability due to several impairments including back, pelvic, and abdominal pain, and mental limitations.  AR 211–18, 221–43, 246–59; *see also* AR 299–308 (Pl.'s

1    pre-hearing brief).  Plaintiff claimed she was "constantly" vomiting and experienced "very bad

2    nausea and abdominal pain," "leaking diarrhea," and acid reflux, and was working with

3    gastroenterologists on her gastrointestinal problems.  AR 211; *see also* AR 900 (notes from

4    August 2022 telemedicine gastroenterology visit).  Plaintiff also reported problems with her

5    memory and concentration.  AR 216.  During the September 27, 2022 hearing before the ALJ,

6    Plaintiff testified her average level of pain was "excruciating" and that "[i]t's horrible and I have

7    to just sit down or grab onto something while it passes."  AR 48.

8        The ALJ did not make any findings that Plaintiff was malingering.  *See* AR 17–26.  Thus,

9    to find Plaintiff's testimony not credible, the ALJ was required to "mak[e] specific findings as to

10   credibility and stat[e] clear and convincing reasons for each."  *Robbins v. Social Sec. Admin.*, 466

11   F.3d 880, 883 (9th Cir.2006).  Here, the ALJ failed to engage with Plaintiff's testimony and

12   symptom allegations in any meaningful way.  Instead, the ALJ's decision forces the Court to guess

13   which aspects of Plaintiff's testimony he found to be not credible or inconsistent with the record

14   evidence.  *See Lambert,* 980 F.3d at 1268.  *See also Berry*, 622 F.3d at 1234 (requiring the ALJ to

15   "identify what testimony is not credible"); *Smith*, 14 F.4th at 1113 (requiring the ALJ to provide

16   clear and convincing reasons for "reject[ing] the specific portions of the claimant's testimony that

17   the ALJ has found not to be credible[.]").  The ALJ's decision not only fails to reject any specific

18   portion of Plaintiff's testimony, it does not include a single citation to the September 2022 hearing

19   transcript.  *See* AR 17 – 27 (October 2022 ALJ decision).

20       The Commissioner contends that Plaintiff's self-reported activities and limitations

21   undermine some of her subjective symptom allegations.  Def.'s Cross-Mot. at 3.  However, the

22   ALJ failed to "identify the specific testimony" or other allegations he discredited on this basis and

23   cited no record evidence undermining those allegations.  *Lambert*, 980 F.3d at 1268.  In its cross-

24   motion, the Commissioner cites specific self-reported activities and limitations from the record

25   that Defendant claims undercut Plaintiff's testimony regarding her symptoms.  Def.'s Cross-Mot.

26   at 3.  However, the question on appeal is not whether evidence exists in the record to discount

27   Plaintiff's subjective symptom testimony, but whether the ALJ provided clear and convincing

28   reasons for doing so.  *See Robbins.*, 466 F.3d at 883; *see also Pinto*, 249 F.3d at 847.  The Court

United States District Court
Northern District of California

1    finds the ALJ did not.  The ALJ's broad and citation-free conclusion that Plaintiff is "able to

2    perform extensive activities of daily living, except for possible fatigue from vomiting," AR 24,

3    provides no such clarity.

4            Defendant's cross-motion highlights the decision's lack of clarity.  First, the ALJ noted

5    that Plaintiff's "chronic high dose marijuana use could be contributing with cannabinoid

6    hyperemesis syndrome," but that Plaintiff was unwilling to cut back or stop using marijuana

7    unless hospitalized.  AR 22.  The Commissioner argues that the ALJ thus "reasonably rejected

8    Plaintiff's allegations of debilitating mental symptoms given such reports of noncompliance."

9    Def.'s Cross-Mot. at 4.  But the ALJ did not indicate in any way that this information was meant

10   to discount Plaintiff's mental symptom allegations.  Moreover, although an ALJ may discount a

11   claimant's testimony based on their "failure to seek or follow prescribed treatment," *Rounds*, 807

12   F.3d at 1006 (citing *Molina,* 674 F.3d at 1112–14), the ALJ did not purport to reject any of

13   Plaintiff's allegations on that basis.  *See* AR 22–24.  Second, the Commissioner contends the ALJ

14   "reasonably found Plaintiff's alleged symptoms unreliable given the reports of effective

15   treatment," citing the ALJ's notation that Plaintiff "had some benefit from Lorazepam."  Def.'s

16   Cross-Mot. at 4; AR 23.  But the ALJ similarly did not identify Plaintiff's testimony regarding

17   anxiety as inconsistent with the record evidence, and the Court declines to divine as much from his

18   decision.  The ALJ also noted in his decision that a biopsy of Plaintiff's esophagus was normal,

19   with no evidence of fungal organisms and no significant histologic abnormality.  AR 22.  The

20   Commissioner contends this medical evidence is inconsistent with "Plaintiff[']s] alleged constant

21   vomiting, incontinence, and abdominal pain," and concludes that the ALJ thus "reasonably

22   rejected Plaintiff's allegations."  Def.'s Cross-Mot. at 4, citing AR 320.  However, the ALJ's

23   decision did not identify the allegations the Commissioner points to as inconsistent with this

24   record evidence.

25           Accordingly, the Court finds the ALJ failed to provide clear and convincing reasons for

26   discounting Plaintiff's statements about her alleged symptoms and limitations.  Because the ALJ's

27   assessment of this evidence informed his RFC determination, this error warrants remand.

28

United States District Court
Northern District of California

**C.      ALJ's Evaluation of the Severity of Plaintiff's Back Pain**

In a June 2020 telemedicine consultation with Bay Area Community Health, Plaintiff reported that she has struggled with chronic back pain following a fall on her tailbone when she was young.  AR 418–19.  Plaintiff had an MRI of her spine performed in November 2021, which indicated evidence of degenerative disc disease at L4-5.  AR 844–45.  Additionally, Plaintiff had a telehealth consultation with the Highland Hospital Pain Management Clinic in February 2022, where she discussed attempts to treat her lower back pain and additional treatment plans such as physical therapy or chiropractic sessions.  AR 843.  During the September 2022 hearing before the ALJ, Plaintiff testified that "the older [she] get[s], the worse [her] back pain is getting."  AR 48.

Plaintiff contends she proffered objective medical evidence, treatment testimony and personal testimony sufficient to require a finding of a severe impairment, and the ALJ improperly ignored this evidence when classifying Plaintiff's back pain as non-severe.  Pl.'s Mot. at 4–5, ECF No. 15.

**1.      Legal Standard**

At step two of a Social Security disability inquiry, an impairment or combination of impairments may be found not medically severe "only if the evidence establishes a slight abnormality that has no more than minimal effect on an individual's ability to work."  Social Security Act, § 223(d)(1)(A), 42 U.S.C.A. § 423(d)(1)(A); 20 C.F.R. § 404.1520(a)(4)(ii); *Webb v. Barnhart,* 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996)); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988).  This evaluation at step two is a *de minimis* test intended to "to dispose of groundless claims."  *Smolen,* 80 F.3d at 1290.  Under this standard, an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments *only if* his conclusion is "clearly established by medical evidence."  *Webb,* 433 F.3d at 687 (quoting *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985)) (emphasis added).  A claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether [the claimant's] impairment or combination of impairment(s) is severe."  20 C.F.R. § 404.1529(d)(1).  The burden of proving that an impairment is severe rests with the claimant.  *Tidwell v. Apfel,* 161

10

1   F.3d 599, 601 (9th Cir. 1999); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).

2   **2.      Analysis**

3          The Court finds that the ALJ erred at step two in evaluating the severity of Plaintiff's back

4   condition.  The ALJ's determination that Plaintiff's degenerative disc disease and back pain are

5   not severe is not clearly established by medical evidence in the record.

6          In determining whether an impairment is severe, an ALJ must engage in "a careful

7   evaluation of the medical findings which describe the impairment(s) and an informed judgment

8   about its (their) limiting effects on the individual's physical and mental ability(ies) to perform

9   basic work activities[.]"  SSR 85-28 (S.S.A. 1985).  A medically determinable impairment "must

10  be established by objective medical evidence from an acceptable medical source."  20 C.F.R. §

11  404.1522(a).  Basic work activities are defined as the abilities and aptitudes necessary to do most

12  jobs, such as: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or

13  handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering

14  simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers

15  and usual work situations; and (6) adapting to changes in a routine work setting.  *See* 20 C.F.R. §§

16  404.1522, 416.922.

17         Here, the ALJ noted that the results of the magnetic resonance imaging (MRI) study dated

18  February 10, 2022 showed mild degenerative disc disease from L4-5, with no significant central

19  canal stenosis or neural foraminal narrowing at any level of the lumbar spine.  AR 19 (referring to

20  AR 845).  The medical record also indicated no fractures or subluxations and normal results for

21  the conus medullaris.  AR 845.  Defendant argues that these findings are inherently at odds with a

22  finding of a severe impairment.  Def.'s Cross-Mot. at 6, ECF No. 20.  But an impairment "may be

23  found not severe *only if* the evidence establishes a slight abnormality that has no more than a

24  minimal effect on [a claimant's] ability to work."  *Webb*, 433 F.3d at 686 (quotations omitted).

25  Normal findings regarding other aspects of Plaintiff's lumbar spine do not themselves undercut

26  allegations of back pain that would limit Plaintiff's ability to work, nor does "mild degenerative

27  disc disease" necessarily translate to mild pain or to an impairment with no more than a minimal

28  effect on an individual's ability to work.  *See e.g.*, *Garcia v. Colvin*, No. 14-cv-00796-SH, 2014

WL 6750288, at *1 (C.D. Cal. Dec. 1, 2014) (finding severe impairments including "mild degenerative disc disease of the lumbar spine" and "mild degenerative disc disease of the cervical spine"); *Misty F. v. Commissioner of Soc. Sec.*, No. 21-cv-5383-SKV, 2022 WL 101887, at *1 (W.D. Wash. Jan. 10, 2022) (listing ALJ's step-two findings of severe impairments including "mild degenerative disc disease"); *Figueroa v. Berryhill*, No. 17-cv-0026-KS, 2018 WL 2176386, at *1 (C.D. Cal. May 10, 2018) (severe impairments included "mild degenerative disc disease of the cervical spine").

Regarding her functional limitations, Plaintiff reported difficulties in lifting, squatting, bending, using stairs, and sitting, walking or standing for prolonged periods.  AR 216, 711. Although Plaintiff's reported symptoms of pain are relevant to the severity analysis as per 20 C.F.R. § 404.1529(d)(1), her testimony regarding "excruciating" pain that "sometimes . . . lasts a long, long time" was made in response to a general inquiry about her average level of pain, rather than about her back pain specifically.  AR 48.  Still, Plaintiff has provided objective medical evidence that at least some of these self-reported limitations were attributable to her back pain. *See* AR 711–12 (May 2021 progress notes from doctor's visit for coccyx (tailbone) pain noting "[s]till with significant low back pain and difficulty sitting/standing for long periods of time" and listing "difficulty sitting or standing for long periods of time" under assessment and plan for coccydynia); 859 (records from visit to pain medicine clinic noting that pain started in her lower back and is worse with prolonged standing or sitting on hard surfaces.)  *See also* AR 844–45 (MRI findings from November 2021 regarding degenerative disc disease of lumbar spine and assessment of "[c]hronic bilateral low back pain without sciatica" and prescription of pain medication (Lyrica)).

Accordingly, Plaintiff has satisfied her burden of demonstrating that her back pain has more than a minimal effect on her ability to work, and thus has satisfied the *de minimis* test to proceed with step two of the sequential analysis.  Because the ALJ's assessment of Plaintiff's medically determinable impairments informed the ALJ's RFC determinations, this error warrants remand.

**D.      Medical Opinions**

Plaintiff argues 1) the ALJ erred in finding the medical opinion of representative-referred psychological consultant Dr. Katherine Wiebe unpersuasive, 2) the ALJ erred in finding the opinions of four State agency medical consultants persuasive, and 3) the ALJ erred in finding the medical opinion of independent psychological consultant Dr. Aparna Dixit unpersuasive.  Pl.'s Mot. at 8–11.

**1.      Legal Standard**

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of medical opinions using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c.  *See Woods v. Kijakazi*, 32 F.4th 785, 791–93 (9th Cir. 2022) (embracing the new regulatory framework for evaluating medical opinions).  Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors.  *See* 20 C.F.R. §§ 404.1520c(a)(2), 416.920c(a)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791–92; *see also* 20 C.F.R. 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Woods*, 32 F.4th at 792 (9th Cir. 2022); *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

The new regulations replace the former hierarchy of medical opinions and no longer require the ALJ to give greater weight to the medical opinions of treating physicians. *See Woods*, 32 F.4th at 787; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). Now, the ALJ is free to consider the medical opinions equally and may find an opinion more persuasive than others provided that substantial evidence supports such a finding. Substantial evidence will be found when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

### 2.    Analysis

#### a.    Opinion of Dr. Wiebe

Dr. Katherine Wiebe, Ph.D., is a licensed psychologist who conducted an assessment of Plaintiff in 2022 following a referral by Plaintiff's counsel. AR 609. Dr. Wiebe's written report was based on a 2.25 hour assessment with Plaintiff and her review of Plaintiff's psychiatry records from 2021 and of a disability evaluation by Dr. Aparna Dixit dated October 2020. AR 610. Dr. Wiebe also administered several batteries, inventories and checklists, including a Barona estimate; Montreal Cognitive Assessment (MCA); selected items from the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS) to test memory, language, semantic fluency and attention; Beck Depression Inventory (BDI-II); Beck Anxiety Inventory; Posttraumatic Checklist for DSM-5; a mental status/psychiatric symptoms sheet, and the Million Clinical Multiaxial Inventory-IV (MCMI-IV). AR 613–14. Due to the COVID-19 pandemic, the assessment was conducted by telephone rather than in person. AR 610.

1    Dr. Wiebe found Plaintiff's overall intellectual functioning was moderately impaired, with

2    moderate impairment in sensory/motor abilities, moderate to severe impairment in language, and

3    severe impairments in attention/concentration/persistence, executive functioning, and memory.

4    AR 614–15. Dr. Wiebe noted that Plaintiff's depression and anxiety inventory scores indicated

5    severe depression and severe anxiety. AR 615. Dr. Wiebe found that Plaintiff "expressed passive

6    suicidal ideation" and noted a history of attempted suicide and continuing self-harm. AR 613; *see*

7    *also* AR 616. Dr. Wiebe noted that Plaintiff "evinces cognitive functioning deficits as well as

8    psychiatric disorder symptoms that would affect her ability to attend to, remember, and follow

9    through with directions and tasks especially with the demands of an employment situation." AR

10   622. Dr. Wiebe opined that Plaintiff "is vulnerable to decompensation from task and interpersonal

11   stressors including in a work environment. She is socially isolated and alienated and would have

12   difficulty communicating and relating effectively with others, including co-workers, the public,

13   and supervisors in a workplace" and opined that Plaintiff "is likely unable to maintain a regular

14   job." AR 622.

15   The ALJ found Dr. Wiebe's opinion "not persuasive" because: 1) the limitations Dr.

16   Wiebe found were "far too restrictive and not supported by the mental health treatment notes,

17   which showed some waxing and waning of anxiety and depression symptoms, but not to the extent

18   that would justify the extreme limitations suggested by Dr. Wiebe"; 2) Dr. Wiebe did not examine

19   Plaintiff in person and "appeared to have relied heavily on [Plaintiff's] self-report"; and 3) "Dr.

20   Wiebe was retained by the claimant's representative for the primary purpose of obtaining

21   disability benefits" and "her report and opinion must be viewed with that in mind." AR 24. These

22   three reasons map well onto three relevant factors under the regulations: supportability,

23   consistency, and relationship with claimant. 20 C.F.R. § 416.920c(c)(1)-(3). However, the Court

24   finds that these reasons are not supported by substantial evidence and are insufficient to find Dr.

25   Wiebe's opinion unpersuasive.

26   First, the ALJ found that the limitations Dr. Wiebe found were "not supported by the

27   mental health treatment notes" regarding Plaintiff's anxiety and depression symptoms. AR 24.

28   However, the ALJ did not cite any record evidence of such treatment notes, AR 24, and Dr.

15

Wiebe's assessed limitations were not based entirely on her evaluation of Plaintiff's anxiety and depression. Rather, Dr. Wiebe's assessed limitations were supported by other parts of her examination, including 1) Dr. Wiebe's observations that Plaintiff showed "frequent lapses in attention" and "had trouble with focus[,]" 2) Plaintiff's inability on the MoCA to repeat three digits in backwards order or to count backwards by seven; 3) Plaintiff's score "in the extremely low, <0.1 percentile range" on the RBANS Immediate Memory index, including not being able to recall any of five words without cueing after a short delay; 4) Plaintiff's score of 0/1 on an Attention task on the MoCA and score in the 5th percentile on the RBANS digit span Attention task; 5) Plaintiff's score "in the extremely low, 0.1 percentile range" on the RBANS semantic fluency task. AR 614.

Second, the ALJ found that Dr. Wiebe's opinion was less persuasive because her assessment of Plaintiff was conducted telephonically and because Dr. Wiebe "appeared to have relied heavily" on Plaintiff's self-reporting. AR 24. Much like the ALJ's September 2022 hearing in this matter, Dr. Wiebe's assessment was conducted telephonically due to the COVID-19 pandemic. AR 17, 610. The Commissioner cites no legal authority for the proposition that a medical opinion is less persuasive simply because it included information gleaned telephonically, and the Court has found none. The ALJ did not apply this reasoning to other medical opinions in the record; for example, the opinions on which the ALJ "relie[d] for the most part" in determining the Plaintiff's physical RFC appear to be based on State agency consultants' evaluation of Plaintiff's medical record alone. *See* AR 23, 73–75, 94–96; *see also* Def.'s Cross-Mot. at 9. Moreover, as discussed above, Dr. Wiebe's evaluation and report was not limited to Plaintiff's self-reported symptoms but also incorporated several objective assessment tools and tests. The ALJ did not point to any portion of Dr. Wiebe's report and opinion demonstrating "heav[y]" reliance on Plaintiff's self-reporting. *See* AR 24. In its cross-motion, the Commissioner argues that Dr. Wiebe's "opinion was given in a check-box form, with no explanations or supporting examination findings given for each checked limitation." *Id.* at 8. This argument does not appear in the ALJ's decision and is undermined by the record; at 17 pages, Dr. Wiebe's is by far the lengthiest of the medical opinions mentioned in the ALJ's decision. *See* AR 609–26. Dr. Wiebe's

16

1   report and opinion concludes with a two-page table of assessed limitations.  AR 625–26.

2   However, Dr. Wiebe supported those limitations with examination findings and lengthy written

3   explanations.  AR 614–15 (discussing cognitive functioning), 615–21 (discussing emotional

4   functioning), 624 (quantitative summary of examinations, scores, and percentiles where

5   applicable).  Thus, substantial evidence does not support the ALJ's finding that Dr. Wiebe's

6   opinion was less persuasive because it was conducted telephonically or "relied heavily" on

7   Plaintiff's self-reporting.

8          Third, the ALJ found Dr. Wiebe's opinion less persuasive because Plaintiff was referred to

9   Dr. Wiebe by her attorney to generate evidence for Plaintiff's claim.  AR 24.  This fact does not

10  constitute substantial evidence to find Dr. Wiebe's opinion unpersuasive, absent some other

11  evidence of bias on Dr. Wiebe's part, which the ALJ did not find.  *See Reddick v. Chater*, 157

12  F.3d 715, 726 (9th Cir. 1998) ("[T]he mere fact that a medical report is provided at the request of

13  counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis

14  for evaluating the reliability of the report."); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.

15  1996) ("[T]he fact that the examination was conducted at the request of an attorney is relevant

16  where the opinion itself provides grounds for suspicion as to its legitimacy.  We have held the

17  source of a referral to be relevant *where there is no objective medical basis for the opinion*[.]")

18  (emphases added); *T.N. v. Kijakazi*, No. 20-CV-04946-TSH, 2021 WL 4553581, at *8 (N.D. Cal.

19  Oct. 5, 2021) ("it appears the ALJ was implicitly finding that Dr. Franklin was biased, and the

20  Court finds this conclusion contrary to Ninth Circuit caselaw and not supported by substantial

21  evidence.")

22         In sum, none of the reasons the ALJ cited for finding Dr. Wiebe's report unpersuasive are

23  supported by substantial evidence. Remand is therefore warranted.

24                              **b.     Opinions of State Agency Consultants**

25         State agency medical consultants Dr. H. Samplay and Dr. K. Rudito each conducted a

26  review of Plaintiff's medical record and determined that Plaintiff had no more than "light

27  limitations."  AR 73–75, 94–97.  State agency psychiatric consultants Dr. D. Lucila and Dr. M.

28  Morando conducted mental RFC assessments in July and September 2021 and determined

1    Plaintiff was moderately limited in: her ability to maintain attention and concentration for

2    extended periods; "to perform activities within a schedule, maintain regular attendance, and be

3    punctual within customary tolerances"; "[t]he ability to complete a normal workday and

4    workweek without interruptions from psychologically based symptoms and to perform at a

5    consistent pace without an unreasonable number and length of rest periods" and in her ability to

6    respond appropriately to changes in the work setting.  AR 76–78, 97–101.  Dr. Morando also

7    found Plaintiff was moderately limited in her "ability to set realistic goals or make plans

8    independently of others."  AR 100.  Drs. Lucila and Morando both determined Plaintiff did not

9    experience any other significant limitations relevant to her mental RFC.  AR 76–78, 97–101.

10          The ALJ stated that he primarily relied on the assessments of Drs. Samplay and Rudito for

11    Plaintiff's physical RFC determination.  AR 23.  Although the ALJ found the opinions of Drs.

12    Lucila and Morando to be "persuasive," he did not state the extent to which he relied on either of

13    their opinions.  AR 24.

14          The ALJ stated that the medical opinions of Dr. Samplay and Dr. Rudito were persuasive

15    because "they are generally consistent with the preponderance of the longitudinal medical

16    evidence of [the] record as a whole."  AR 23.  However, the ALJ's decision includes no discussion

17    of any of the objective medical evidence that informed Dr. Samplay's or Dr. Rudito's opinions.

18    *See Woods*, 32 F.4th at 791–92; *see also* 20 C.F.R.  404.1520c(c)(1), 416.920c(c)(1).  The Court

19    thus finds the ALJ did not sufficiently address the supportability of Dr. Samplay's or Dr. Rudito's

20    opinions.

21          As to State agency psychiatric consultants Dr. Lucila and Dr. Morando, the ALJ stated that

22    he "f[ound] the opinions of Dr. Lucila and Dr. Morando persuasive," and separately describes

23    their opinions as "well-reasoned."  AR 24.  The ALJ offered no other evidence of either opinion's

24    supportability or consistency with the record as a whole.  The Commissioner argues that the ALJ's

25    use of the word "well-reasoned" to describe the opinions of Dr. Lucila and Dr. Morando goes to

26    supportability, citing Dr. Samplay's discussion of evidence related to Plaintiff's mental health

27    treatment history and reported daily activities, and Dr. Rudito's consideration of prior mental

28    functioning tests.  Def.'s Cross-Mot. at 9–10.  But the ALJ only described the opinions of Dr.

United States District Court
Northern District of California

1  Lucila and Dr. Morando as "well-reasoned."  Meanwhile, the evidence the Commissioner cites as

2  evidence of supportability pertains to statements made by *other* State agency consultants.  AR 75,

3  96–97.  More importantly, the ALJ's decision does not actually mention the record evidence the

4  Commissioner cites.  *See Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th

5  Cir. 2009) ("The Court "review[s] the ALJ's decision based on the reasoning and factual findings

6  offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may

7  have been thinking.").  Here, the ALJ failed to conduct a supportability analysis regarding the

8  opinions of any of the state agency consultants, and the Court declines to contrive one simply

9  because he described the opinions of two of the consultants as "well-reasoned."

10       As to consistency, the Commissioner contends the ALJ explained that the opinions of Drs.

11  Lucila and Morando were consistent with the opinion of Dr. Dixit.  However, the ALJ provides no

12  evidence of consistent findings across these opinions and instead points out ways in which Dr.

13  Dixit's opinion diverges from that of Drs. Lucila and Morando.  AR 24.

14       Accordingly, the Court finds the ALJ failed to address the factors of supportability and

15  consistency in evaluating the persuasiveness of the medical opinions of State agency consultants

16  Dr. Samplay, Dr. Rudito, Dr. Lucila and Dr. Morando.  This error warrants remand.

17            **c.**     **Opinion of Dr. Dixit**

18       Dr. Aparna Dixit, PsyD, is a licensed clinical psychologist who conducted an assessment

19  of Plaintiff in October 2020 following a referral by the California Department of Social Services.

20  AR 438, 441.  Dr. Dixit's written report was based on a clinical interview including history and

21  mental status examination and her review of available records.  AR 438.  Dr. Dixit also conducted

22  the Wechsler Adult Intelligence Scale-IV (WAIS-IV), Wechsler Memory Scale-IV (WMS-IV),

23  and Trail Making Test A and B (TMT).  AR 438.

24       On the WAIS-IV, Dr. Dixit found that Plaintiff's Verbal Comprehension Index, Perceptual

25  Reasoning Index, Working Memory Index, and Processing Speed Index each fell within the low

26  average range.  AR 441.  Dr. Dixit found that Plaintiff's WMS-IV scores indicated "mildly

27  compromised auditory and intact visual working memory functioning" and that Plaintiff's "TMT

28  profile indicates no impairment in executive functions."  AR 441.  Dr. Dixit found that the tests

United States District Court
Northern District of California

1   revealed "[n]o significant cognitive deficits[.]"  AR 441.  Dr. Dixit stated that Plaintiff showed

2   "some symptoms and signs" of depression and anxiety.  AR 441.  Dr. Dixit found that Plaintiff

3   "may have mild difficulty dealing with the public[,]" but that she "should have no difficulty

4   interacting and relating to co-workers and supervisors."  AR 441.  Dr. Dixit found Plaintiff

5   experienced no impairment in her ability "to maintain pace and persistence over 2 hour

6   increments[,]" to "perform tasks requiring mental flexibility[,]" or "to remember and carry out

7   detailed and complex tasks[.]"  AR 441.

8          The ALJ states that he relied primarily on the assessments of Dr. Dixit in reaching the

9   mental RFC determination.  AR 24.  Plaintiff asserts that the ALJ erred in finding the opinion of

10  Dr. Dixit persuasive.  Pl.'s Mot. at 14–15.  The Commissioner cites statements from the record –

11  only one of which is clearly attributable to Dr. Lucila or Dr. Morando – as evidence of consistency

12  between these opinions.  Def.'s Cross-Mot. at 11; AR 71, 91.  But this Court is "constrained to

13  review the reasons the ALJ asserts[,]" not post-hoc arguments raised by the Commissioner.

14  *Brown-Hunter*, 806 F.3d at 492 (simplified); *Bray*, 554 F.3d at 1225 (citation omitted).  The ALJ

15  did not mention this record evidence, nor did the ALJ point to any other consistencies across these

16  opinions.  AR 24.  Rather, the ALJ concluded that Dr. Dixit's finding that Plaintiff was not limited

17  "in [her] ability to perform any level of work tasks" was persuasive based on its supposed

18  consistency "with the well-reasoned assessments of State agency medical consultants Dr. Lucila

19  and Dr. Morando."  AR 24.  The ALJ then immediately undercut this statement by listing ways in

20  which these opinions diverged from Dr. Dixit's assessment:

21              Dr. Lucila and Dr. Morando found moderate limitation in the
            claimant's ability to maintain attention and concentration for
22          extended periods, to perform activities within a schedule, maintain
            regular attendance and be punctual with customary tolerances, and to
23          complete a normal workday and workweek without interruptions
            from psychologically based symptoms and to perform at a consistent
24          pace without an unreasonable number and length of rest periods.

25  AR 24.

26          Accordingly, the Court finds the ALJ failed to properly evaluate the persuasiveness of Dr.

27  Dixit's medical opinion.  This error warrants remand.

28

United States District Court
Northern District of California

**E.      Plaintiff's RFC**

Plaintiff argues that the ALJ erred in evaluating Plaintiff's RFC.  Pl.'s Mot. at 13–14.
Plaintiff's argument on this point, however, relies heavily on her argument that the ALJ failed to
properly classify Plaintiff's severe impairments.  Because the Court finds that the ALJ erred in
evaluating the severity of her back pain and in assessing the medical opinions in this case, and
because the ALJ's RFC determinations were necessarily predicated on the ALJ's assessment of
Plaintiff's medically determinable impairments, the Court remands on this issue as well.  On
remand, the ALJ must evaluate Plaintiff's RFC based on assessment of the medical opinions and
on all of Plaintiff's medically determinable impairments.

**F.      Remedy**

The remaining question is whether to remand for further administrative proceedings or for
the immediate payment of benefits.  The Social Security Act permits courts to affirm, modify, or
reverse the Commissioner's decision "with or without remanding the cause for a rehearing."  42
U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019.  "[W]here the record has been developed
fully and further administrative proceedings would serve no useful purpose, the district court
should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th
Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are
outstanding issues that must be resolved before a disability determination can be made, and it is
not clear from the record that the ALJ would be required to find the claimant disabled if all the
evidence were properly evaluated."  *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018)
(citations omitted).  It is only "rare circumstances that result in a direct award of benefits" and
"only when the record clearly contradicted an ALJ's conclusory findings and no substantial
evidence within the record supported the reasons provided by the ALJ for denial of benefits."
*Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).  Here, it is not clear that the ALJ would be
required to find Plaintiff disabled.  Accordingly, remand for further proceedings is appropriate.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion and **DENIES**
Defendant's cross-motion.  This matter is **REMANDED** for further administrative proceedings

consistent with this order.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

      **IT IS SO ORDERED.**

Dated: September 10, 2024

THOMAS S. HIXSON
United States Magistrate Judge